## IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **No. 5:17CV86-JRG-CMC** |
| | § | |
| **JEANNA SMITH** | § | |

## MEMORANDUM ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The above-entitled and numbered civil action was referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Defendant Jeanna Smith ("Smith") did not file objections to the Report and Recommendation. The United States of America ("Government") filed partial objections to the Report and Recommendation. The Court has conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

### *The July 26, 2017 Injunction Order*

The Government brought this action pursuant to 26 U.S.C. §§ 7401 and 7402(a) to halt Smith's failure to timely file employment and unemployment tax returns ("Form 941" and "Form 940") and failure to timely pay the related federal employment and unemployment taxes owed by her businesses. At the request of Smith and the Government, the Court entered a Judgment and Permanent Injunction by Consent on July 27, 2017 ("Injunction Order").[1] Dkt. No. 30. The

---

[1] In the consent Injunction Order, Smith waived the entry of findings of fact and conclusions of law and any right she may have to appeal from the Injunction Order. Dkt. No. 30, ¶ 3.

Injunction Order ordered Smith to obey her employment and unemployment tax obligations, particularly as they applied to her business Paris Senior Care Group ("PSCG").

***The Government's motion for order to show cause why Smith should not be held in contempt***

On March 21, 2018, the Government moved the Court for an order to show cause why Smith should not be held in contempt for violating the Injunction Order. Dkt. No. 36. According to the Government's memorandum in support of its motion, since the Court issued the Injunction Order on July 27, 2017, requiring Smith to timely pay PSCG's employment and unemployment taxes, PSCG had accrued at least $38,837.98 in delinquent tax.[2] Dkt. No. 38 at pg. 4. According to the Government, the returns for the last quarter of 2017 and the first quarter of 2018 were likely delinquent as well, as no biweekly payments had been made to the IRS. Assuming the employment tax obligations for these two quarters are comparable to the previous two, PSCG would have accrued an additional $43,921.10 in delinquent employment taxes for a total of $87,842.20. *Id.*

The Government further asserted Smith and PSCG had either filed late or not at all the three Form 941 Employer's Quarterly Federal Tax Returns that had become due since the Injunction Order went into effect, and Smith and PSCG had also failed to file the 2017 Form 940 Employer's Annual Federal Unemployment ("FUTA") Tax Return, which was due on January 31, 2018. *Id.* Finally, the Government asserted Smith had also failed to submit to the IRS the monthly sworn affidavits reporting compliance with the Injunction Order which were due on the first of each month. Of the eight affidavits that were due between August 2017 and March 2018, Smith only submitted one affidavit – the one for January 2018, and that affidavit was filed two weeks late. *Id.* at pg. 5.

---

[2] When accounting for penalties and interest accrued through February 26, 2018, the Government asserts the "delinquency climbs to $43,921.10." Dkt. No. 38 at pg. 4.

The Government requested the Court order Smith to show cause why she should not be held in contempt. According to the Government, if Smith failed to show cause, the Court should hold her in civil contempt to compel her compliance with the Injunction Order. The Government requested the Court conditionally incarcerate Smith following a finding of contempt, until she complies with the Injunction Order. *Id*. at pg. 7. The Government suggested no other sanctions that might enforce compliance with the Injunction Order.

### April 19, 2018 show cause hearing

On March 22, 2018, the Court issued an Order to Show Cause, ordering Smith to file a response and setting a show cause hearing on April 19, 2018 to consider the evidence presented by the parties. Dkt. No. 39. The Court advised that Smith's failure to file a response and/or to appear at the hearing might result in a recommendation that the Court enter an order of contempt. Although Smith did not file a response as ordered, she did appear at the April 19, 2018 show cause hearing.

The Government filed a witness and exhibit list for the April 19 show cause hearing, including affidavits and other evidence, and presented testimony of IRS revenue officer Linda Andrews at the hearing. Smith also testified at the hearing. Smith did not deny she had violated the Injunction Order. Instead, she represented she would fully comply in the future. Dkt. No. 44 at 43:21-24. She further represented she would immediately open a separate bank account as required by the Injunction Order. *Id*. at 38:2-7. According to Smith, her goal was to retain an accountant to help take care of her books and to "keep running." *Id.* at 40:2-20.

### The Government's Notice of Continued Noncompliance

Before the Magistrate Judge issued a recommendation after the April 19 hearing, the Government filed on May 30, 2018, a Notice of Continued Noncompliance with the Court's

Injunction Order. Dkt. No. 45. According to the notice, Smith had made little progress, if any, on her April 19 pledge to become current with her obligations under the injunction.[3]

### *June 21, 2018 supplemental show cause hearing*

On June 1, 2018, the Magistrate Judge issued a Notice of Supplemental Hearing Regarding Order to Show Cause, setting a supplemental hearing on this matter June 21. On June 19, the United States filed a witness and exhibit list for the "follow up to the April 19, 2018 show cause hearing." Dkt. No. 49. The Government listed IRS Revenue Officer Linda Andrews and Smith as witnesses. Although Smith acknowledged receipt of the order setting the supplemental hearing, she did not appear at the June 21 supplemental show cause hearing nor file any response to the Government's notice of continued noncompliance.

### *The Government's supplemental briefing on remedies following a finding of contempt*

At the request of the Magistrate Judge, the Government submitted supplemental briefing on June 29 on available sanctions that would be appropriate. Dkt. No. 53. According to the Government, the Injunction Order entered a year prior had been ineffective in inducing Smith's compliance with the tax laws, and Smith had allowed PSCG to incur at least $45,000 in additional delinquent employment taxes since the Injunction Order took effect. Thus, the Government argued

---

[3] Specifically, the Government pointed to the following, which had not been done: (1) unfiled returns (2017 Form 940 annual tax return due 1/31/18, 2017 fourth quarter Form 941 return due 1/31/18, and 2018 first quarter Form 941 return due 4/30/18); (2) delinquent deposits (no biweekly deposits of taxes withheld from employees of PSCG for second quarter of 2018 and no deposits of Form 940 unemployment taxes for PSCG for 2018); (3) unpaid tax (2017 third quarter Form 941 return was filed late, and the $22,571.92 reported tax owed remained unpaid) (2017 fourth quarter Form 941 return was filed late and the $26,009.03 reported tax owed remained unpaid); and (4) compliance affidavits (monthly compliance affidavits for March and April 2018 had not been received). Dkt. No. 45 at pgs. 2-3.

that unless Smith could cure her violations within fifteen days, the Court should modify the Injunction Order to require Smith to shut down her business and to prohibit Smith from owning or operating a business with employees for five years. The Government submitted examples of district court orders requiring defendants to shut down their businesses after the defendants were deemed to have violated an injunction. Alternatively, the Government asserted if "Smith needs additional time to wind the business down or has difficulties doing so, she has the option to file for a Chapter 7 bankruptcy action, so that a receiver appointed by the bankruptcy court can orderly wind down the business." Dkt. No. 53 at pg. 4.

## SEPTEMBER 13, 2018 REPORT AND RECOMMENDATION

On September 13, 2018, the Magistrate Judge entered a Report and Recommendation, recommending Defendant Jeanna Smith, through her operation of PSCG, be held in civil contempt of the Court's July 27, 2017 Judgment and Permanent Injunction by Consent and that she be given an opportunity to purge herself of her contempt. Specifically, the Magistrate Judge recommended the Court order the Government to file with the Court and serve on Smith, within ten days from the date of entry of any Order Adopting the Report and Recommendation, a sworn declaration from Revenue Officer Andrews setting forth the outstanding returns and the exact amount due and owing by Smith to the Government under the terms of the Injunction Order as of the date of the Order Adopting.

The Magistrate Judge further recommended that if Smith fails to purge herself of her contempt within fifteen days following the filing of the sworn declaration by remitting to the Government the returns and the amounts set forth in the sworn declaration, the Government be ordered to file with the Court and serve on Smith a proposed receivership order, identifying a

receiver and recommending the terms of the receivership. The Magistrate Judge noted in most cases relied upon by the Government where a court modified the scope of a permanent injunction to require the winding down of a business as the appropriate sanction for civil contempt, the court had first appointed a receiver (or ordered the defendant to engage an accountant) to oversee the preparation of required tax returns and to assist the business in making required federal tax payments. Report and Recommendation at pg. 14.

## THE GOVERNMENT'S RESPONSE

In its response to the Magistrate Judge's Report and Recommendation, the Government agrees with the Magistrate Judge's finding of contempt and allowing fifteen days to purge the contempt. However, the Government believes Smith's business is not viable, and thus, objects to the part of the Report and Recommendation recommending the Government be ordered to identify a receiver in the event Smith fails to purge herself of her contempt. According to the Government, forcing PSCG to shut down is the best remedy for Smith's contempt.

Alternatively, the Government asserts any receiver should be appointed at Smith's or PSCG's expense. According to the Government, before such a receiver is even considered by the Court, Smith should be required to establish its feasibility, by financial statements, bank accounts, and documents, that (1) PSCG is a financially viable business; (2) PSCG would be a financially viable business if it were complying with the injunction; and (3) that it would be a financially viable business while complying and while paying a receiver's salary. The Government asserts the Court could require Smith to establish these aspects either within the fifteen-day window to attempt to purge the contempt, or within an additional fifteen-day window. Dkt. No. 56 at pg. 3, n. 5.

## LEGAL STANDARD

"Courts possess the inherent authority to enforce their own injunctive decrees." *Fed. Trade Comm'n v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4426381, at *2 (E.D. Tex. Aug. 19, 2016) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986))). A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order. *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009); *S.E.C. v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). A court may enforce its orders through civil contempt, which is intended to compel obedience to a court order. *Liberty*, 2016 WL 4426381, at *2 (citing *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.")).

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *SEC v. Res. Dev. Int'l LLC*, 217 Fed.Appx. 296, 298 (5th Cir. 2007) (citing *Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). The elements of contempt the movant must prove by clear and convincing evidence are: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). "The contemptuous action need not be willful so long as the contemnor actually failed to comply with the court's order." *Am.*

*Airlines, Inc.*, 228 F.3d at 581; *see N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984).

## *DE NOVO* REVIEW

### *Whether Smith is in contempt of the Injunction Order*

As noted above, the Government, as the movant, bears the initial burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by Smith, and (3) that Smith failed to comply with the court's order. *Am. Airlines, Inc.,* 228 F.3d at 581.  It is undisputed the Injunction Order constitutes a court order that required certain specified conduct by Smith.  As set forth by the Magistrate Judge, the Injunction Order entered in this matter on July 27, 2017 – the entry to which Smith consented – required her to, among other things:

- segregate and hold separate and apart from all other funds all monies withheld from employees or collected from others for taxes under any internal revenue laws of the United States and to deposit the monies so withheld and collected, as well as the employer's share of FICA taxes, in an appropriate federal depository bank in accordance with the federal deposit regulations;

- deposit FUTA taxes in an appropriate federal depository bank each quarter in accordance with the federal deposit regulations;

- sign and deliver affidavits, letters, or other correspondence signed under penalty of perjury pursuant to 28 U.S.C § 1746 to the Internal Revenue Service, no later than the first day of each month, stating that the requisite withheld income, FICA, and FUTA tax deposits were timely made;

- timely file all Form 941 and 940 tax returns with the IRS for any business she currently operates or comes to operate; and

- timely pay all required outstanding liabilities due on each tax return required to be filed, for any business she currently operates or comes to operate.

Dkt. No. 30 at pgs. 3-4.

At the April 19, 2018 show cause hearing, Smith did not dispute the Injunction Order clearly and unambiguously required her to timely file all Form 941 and 940 tax returns with the IRS and to timely pay all required outstanding liabilities due on each tax return required to be filed for any business she currently operates. Report and Recommendation at pg. 8. The Court agrees with the Magistrate Judge the Government has satisfied the first two requirements of the civil contempt standard.

Regarding the third requirement, whether the Government has established Smith failed to comply with the Injunction Order, the Magistrate Judge noted Smith admitted at the April 19 show cause hearing she had violated the Injunction Order. However, Smith represented to the Court she would comply in the future. Specifically, Smith testified she could make timely deposits to the IRS and still be able to keep her business running. *Id*. (citing Dkt. No. 44 at 34:13-19).

As set forth in detail in the Report and Recommendation, despite the representations made by Smith at the April 19 show cause hearing, Smith continues to violate multiple provisions in the Injunction Order. Report and Recommendation at pgs. 8-9. As held by the Magistrate Judge, the Court finds the Government's proof of Smith's noncompliance and continued noncompliance is clear and convincing, "consisting of records maintained by the Government and sworn declarations and testimony by IRS Revenue Officer Andrews, who has personal knowledge of the information she has provided to the Court." *Id*. at pg. 9.

Having concluded the Government met its burden of demonstrating by clear and convincing evidence that Smith is in civil contempt of the Injunction Order, the Magistrate Judge next considered whether Smith justified her noncompliance. *Id*. at pg. 10 (citing *United States of America*

*v. Latney's Funeral Home, Inc.*, 41 F. Supp. 2d 24, 30 (D.D.C. 2014) ("Once the court determines that the movant has made the above three-part showing, the burden shifts to the defendant to justify the noncompliance by, for example, demonstrating its financial inability to pay the judgment or its good faith attempts to comply.")).   As noted by the Magistrate Judge, Smith did not assert at the April 19 show cause hearing she was unable to comply due to poverty or insolvency.

Despite having additional time following the April 19 show cause hearing to demonstrate compliance as she represented she would do, Smith did not provide evidence of progress toward the missing federal tax returns. Smith did not respond to the Government's notice of continued noncompliance. She did not appear at the July 21 supplemental show cause hearing despite acknowledging receipt of the notice.  Nor did she file any objections to the Magistrate Judge's Report and Recommendation.

Defendant Smith, through her operation of PSCG, has failed to comply with the terms of the Injunction Order. To date, Smith has not justified her noncompliance with the Injunction Order. Accordingly, the Court agrees with the Magistrate Judge that Smith is in civil contempt of the July 27, 2017 Judgment and Permanent Injunction by Consent.  Having found Smith is in civil contempt due to her failure to comply with the Injunction Order, the Court considers the appropriate sanction.

### *The appropriate civil contempt sanction*

Under 26 U.S.C. § 7402, the Court has "a broad range of powers necessary to compel compliance with the tax laws."  *United States v. RaPower-3, LLC*, 325 F. Supp. 3d 1237, 1246 (D. Utah 2018).  On its face, § 7402(a) authorizes a court to issue an injunction when "necessary or appropriate for the enforcement of the internal revenue laws." *United States v. Chesapeake Firestop Prod., Inc.*, No. CV DKC 17-3256, 2018 WL 3729036, at *3 (D. Md. Aug. 6, 2018).  "Section

7402(a) appears to be an independent, catchall, source of authority to issue injunctions that would effectuate compliance with the internal revenue laws." *United States v. Padron*, No. 7:17-CV-00009, 2017 WL 2060308, at *6 (S.D. Tex. May 12, 2017), *judgment entered*, No. 7:17-CV-00009, 2017 WL 2537033 (S.D. Tex. May 12, 2017). "Courts have exercised this broad authority under § 7402(a) in a variety of contexts, including ordering disgorgement of ill-gotten gains against a tax return preparer engaged in fraudulent return preparation, appointing receivers to assist in collection of federal tax liabilities or otherwise ensure compliance with the internal revenue laws, and freezing a defendant's assets." *RaPower-3, LLC*, 325 F. Supp. 3d at 1246-47 (citations omitted).

Fifth Circuit opinions offer little guidance as to the standard for issuing or modifying a permanent injunction under § 7402(a). *United States v. Wells*, No. 5:17-CV-140-DCB-MTP, 2018 WL 2703211, at *4 (S.D. Miss. June 5, 2018), *judgment entered*, No. 5:17-CV-140-DCB-MTP, 2018 WL 3155722 (S.D. Miss. June 5, 2018); *see also Padron*, 2017 WL 2060308, at *4 & n. 42 (acknowledging the absence of Fifth Circuit precedent on the topic)). District courts in this circuit have "simply applied the statute as it reads, asking whether the Government has shown that an injunction is 'necessary or appropriate' to enforce the internal revenue laws." *Wells*, 2018 WL 2703211, at *4 (citing *United States v. Daffron*, No. 3:17-CV-265-CWR-FKB, 2017 WL 4339404, at *1 (S.D. Miss. Aug. 21, 2017); *Padron*, 2017 WL 2060308, at *4).

Other courts have suggested ways to guide the analysis. *See United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530, 558 (E.D. Pa. 2016). The analysis includes whether the defendant is "reasonably likely to violate the federal tax laws again" based on "the totality of the circumstances

surrounding the defendant and his violations."[4] *United States v. Moore*, No. CV 16-6054, 2017 WL 3718529, at *4 (D.N.J. Aug. 29, 2017) (citing *Baker*, 196 F. Supp. 3d at 558 (quoting *United States v. ITS Fin., LLC*, 592 Fed. Appx. 387, 400 (6th Cir. 2014)). Applying that standard in *Moore*, the court found the injunction sought by the United States was overbroad and premature because it would force a shutdown of the defendant's dental practice and stop him from practicing dentistry entirely until the tax liabilities were paid. *Moore*, 2017 WL 3718529, at *4.

As noted above, at the request of the Magistrate Judge following the June 21 supplemental show cause hearing, the Government submitted supplemental briefing on available remedies following a finding of contempt. In that brief, the Government argued modification of the Injunction Order to require Smith to shut down her business and to prohibit her from owning and operating a business with employees for five years would be appropriate and necessary if Smith is unable to purge her contempt within fifteen days. Dkt. No. 53 at pg. 3. The proposed order attached to the Government's supplemental briefing provides, among other things, that Smith be ordered to complete the following in the event she is unable to purge her contempt:

- Permanently shut down the operations of PSCG as an ongoing business. After the 45 days, PSCG shall no longer operate as a business, will no longer have employees, and will no longer have clients or customers. As an alternative to Jeanna Smith herself shutting the business down, she may, within the 45 days, have PSCG file a Chapter 7 bankruptcy action to ensure an orderly windup of business.

- File a notice with the Court within the 45 days advising that she has complied with the order to shut down PSCG or advising that PSCG has filed for bankruptcy.

---

[4] The relevant factors to that analysis include: (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation, and her degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve her in such transaction; (4) the defendant's recognition of her own culpability; and (5) the sincerity of her assurances against future violations. *Chesapeake Firestop*, 2018 WL 3729036, at *3.

- Beginning 45 days after the entry of this order, neither Jeanna Smith, nor any person in active concert or participation with her, shall own, operate, control, manage, consult for, or serve as an officer of any business (including PSCG) that has employees for a period of five (5) years, without prior approval from the Court.

Dkt. No. 53-6 at pg. 4.

Although the Government has shown Smith is in contempt for failing to obey the Injunction Order, the expanded injunctive relief it requests as a remedy for Smith's contempt must be independently assessed. As noted above, in addressing the Government's supplemental brief on remedies, the Magistrate Judge found the case law relied upon by the Government did not warrant a recommendation at that time that PSCG be shut down. The Magistrate Judge noted in most cases where a court issued (or modified the scope of) a permanent injunction to require the winding down of a business the court had first appointed a receiver (or ordered the defendant to engage an accountant) to oversee the preparation of the required tax returns and to assist the business in making required federal tax payments. Report and Recommendation at pg. 14.

For example, in the *Baker Funeral Home* case discussed by the Magistrate Judge, following two motions for contempt filed by the government regarding Baker Funeral Home's noncompliance with the injunction, the parties stipulated to the appointment of a receiver. *Id*. (citing *Baker Funeral Home*, 196 F. Supp. 3d at 538-39). Following the submission of the receiver's annual report for the first year of the receivership, which identified numerous deficiencies by the defendants, the court ordered the parties to brief whether the defendants should be held in contempt of the court's prior orders and whether the scope of the receivership should be modified to grant the receiver authority to wind down the Baker Funeral Home and any other business entities owned or controlled by the defendants. *Baker Funeral Home*, 196 F. Supp. 3d at 540-41.

13

In its third motion for contempt, the government requested the court modify the scope of the amended injunction in the case to (1) direct the appointed receiver to commence an orderly winding down of the business of Baker Funeral Home, Ltd., and Baker Funeral Home, PC; (2) enjoin Mr. and Mrs. Baker from owning, controlling, managing, consulting for, or serving as an officer of any funeral home or cremation business for ten years, or until such time as they show they are capable of complying; and (3) compel the defendants to pay the past-due balance owed to the receiver and attorneys' fees owed to the government. *Id*. at 548.

The court subsequently conducted a hearing on the government's third motion for contempt and found the government had demonstrated by clear and convincing evidence the defendants were in civil contempt of the court's prior orders. *Id.* at 552. The court further concluded the defendants had not justified their noncompliance with the court's orders. *Id*. at 557. The court found the defendants were unlikely to comply with the federal tax laws going forward, and accordingly, "the scope of the Amended Permanent Injunction must be expanded." *Id*. at 561. The court granted the government's third motion for contempt and stated it would determine at a subsequent proceeding the appropriate sanctions that should be imposed, as well as the terms of the expanded injunction.[5] *Id*. at 560.

---

[5] The court in *Baker Funeral Home* ultimately amended the scope of the permanent injunction, requiring the business to cease operations and enjoining Vince Baker from owning, controlling, or operating any funeral home business for five years. *See* May 24, 2017 Order Amending Scope of the Permanent Injunction (Dkt. No. 112 in Case No. 2:11-cv-7316-ER). However, prior to entering the May 24, 2017 order, the government submitted a proposed form of order setting forth the United States' requested relief; the court held a status conference; the court subsequently ordered the government to submit a memorandum with proposed findings of fact and conclusions of law as to why the relief in the government's proposed order should be granted; the court ordered responsive briefing to the government's memorandum; and the court held an evidentiary hearing. *See* August 19, 2016 Order (Dkt. No. 90 in Case No. 2:11-cv-7316-ER).

In the December 30, 2009 Order of Contempt Against Defendants in the *Wilson* case submitted by the Government as part of its supplemental briefing, the court found the defendants could not incur any federal tax liabilities through the operation of a child daycare business. However, as noted by the Magistrate Judge, the court noted it had earlier ordered "on October 8, 2009, after a hearing, that the defendants engage a payroll service or an accounting firm to file their federal tax returns and to make federal tax deposits as they become due." Report and Recommendation at pg. 15 (citing Dkt. No. 53, Exhibit B at pg. 1).

In *United States v. AmericanWay Management Corp.*, also relied upon by the Government and discussed by the Magistrate Judge, the court held the defendants in civil contempt for disobeying the terms of a Consent Judgment and Stipulated Order of Permanent Injunction. 2017 WL 5514183, at *1. As a civil contempt sanction and pursuant to 26 U.S.C. § 7402(a), the court "appointed a receiver to assume financial control of both AmericanWay and the community-based residential facilities . . . . owned and operated by Nowak (collectively, 'the Businesses'). The receiver was required to inform the [c]ourt of the Businesses' financial viability, 'including but not limited to the Businesses' ability to repay AmericanWay's existing federal tax obligations and stay current on such obligations on a going-forward basis.'"[6] *Id.* The receiver subsequently determined the Businesses were not "financially viable." *Id.*

_____

[6] In the April 20, 2017 Order Appointing Receiver in the *AmericanWay* case, the court appointed a receiver to assume financial control of AmericanWay and the assisted living facilities on a limited basis and for the sole purpose of assisting and effecting the Businesses' compliance with the injunction. *United States v. AmericanWay Management Corp.*, Case No. 3:16-cv-26, Dkt. No. 19 at pgs 1-2. The receiver was given access and control over the Businesses' books and records and was ordered to make an accounting to the court within thirty days "of the assets and financial condition of the Businesses." *Id.* at pgs. 2 & 4. The court ordered the receiver was to be reasonably compensated for performing her duties with assets of the Businesses or, if the Businesses did not have funds available to pay the receiver, from Nowak personally. *Id.* at pg. 4.

Upon consideration of the receiver's report and the government's motion to modify, along with other evidence, the court found that since it entered the injunction on February 5, 2016, the defendants had repeatedly defied its terms. *Id*. The court also found that its contempt finding on April 20, 2017 had not ensured the defendants' compliance with the injunction. *Id.* Finally, as determined by the receiver, the court found the Businesses operated by the defendants were not financially viable and were thus incapable of repaying their existing federal tax liabilities—which exceeded $2.4 million—or complying with their future federal tax obligations. *Id.* Thus, the court granted the government's motion and modified the injunction as follows.

The court expected Nowak and/or the Businesses to sell or otherwise transfer the Businesses' assets, particularly the real estate. However, to the extent any of the Businesses remained under Nowak's control after January 6, 2018 or if any of the Businesses or Nowak employed any employees after that date, the receiver was ordered to take all actions reasonably necessary to ensure that all operations ceased by May 6, 2018. *Id*. at *2. Nowak, whether acting individually or doing business as any other entity, was permanently restrained and enjoined from owning, controlling or operating an assisted living facility or a CBRF, until the earlier of: (1) Nowak's successful petition for relief from the Modified Permanent Injunction; or (2) ten years. *Id.* at *3.

The Magistrate Judge also found instructive the recent case, *United States v. Jk Peris, Inc*., No. 6:12-CV-6628(MAT), 2018 WL 3949896, at *3 (W.D.N.Y. Aug. 16, 2018), and *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24 (D.D.C. 2014), upon which it relies. In *Latney's Funeral Home*, the defendants were a family-owned business, and its co-operators had failed to satisfy their federal tax obligations. 41 F. Supp. 3d at 27. The government brought an action against them, and an injunction was entered that required the defendants to comply with the provisions of

the Internal Revenue Code. *Id.* The defendants failed to comply with the court's injunction, and the government requested they be held in civil contempt. *Id.* The court granted the government's request and appointed a limited receiver to ensure the defendants' compliance with the court's order going forward. *Id.* at 36-38.

The courts in both cases found the defendants had demonstrated a pattern and practice of noncompliance with the internal revenue laws, and the appointment of a receiver was an appropriate "remedial mechanism through which [the Government] will recover Defendants' years of unpaid taxes and guarantee compliance with the Injunction moving forward." *Jk Peris*, 2018 WL 3949896, at * 5 (quoting *Latney's Funeral Home*, 41 F. Supp. 3d at 38). Neither court was persuaded the defendants could remedy their "historic noncompliance" without "close supervision and support." *Id.* The court in *Jk Peris* ordered the government, as it had requested, to identify a receiver and recommend the terms of the receivership, including but not limited to a proposal for limited funding of the receiver's costs and fees by the government. 2017 WL 3949896, at *6.

### *Remedies appropriate for this case*

There are differences in the facts of the case before the Court, but the procedures followed in the above cases remain illustrative. Initially, the Government only requested Smith be conditionally incarcerated following a finding of contempt, until she complies with the Injunction Order. Only after the Magistrate Judge ordered it to do so did the Government mention any other available remedies. Importantly, in its supplemental brief on remedies following contempt, the Government jumped straight to the shut down of PSCG without addressing why the appointment of a receiver would fail to accomplish its objective. Although the Government now raises concerns with such a receivership, it did not raise those issues in its original briefing before the Magistrate

Judge.[7]

Even though Smith failed to appear at the supplemental show cause hearing or to object to the Report and Recommendation, at this time the Court finds a shut down of PSCG is not an appropriate remedial mechanism through which the Government may recover unpaid taxes and guarantee compliance with the Injunction Order moving forward. Entering an order requiring PSCG to cease operations and enjoining Smith from participating in any business (including PSCG) that has employees for five years is premature. In *United States v. Moore*, No. CV 16-6054, 2017 WL 3718529, at *4 (D.N.J. Aug. 29, 2017), the court found the injunction sought by the United States was overbroad and premature because it would force a shutdown of the defendant's dental practice and stop him from practicing dentistry entirely until the tax liabilities were paid. The court held such a harsh result was unprecedented, noting the cases cited by the United States in which the defendants were enjoined from engaging in their livelihood "all involved tax preparers who prepared incorrect tax returns for their clients." *Id*. at *4, n.1. (citing *ITS*, 592 Fed. Appx. at 397; *United States v. Pugh*, 717 F. Supp. 2d 271, 302 (E.D.N.Y. 2010); *United States v. Franchi*, 756 F. Supp. 889, 893 (W.D. Pa. 1991)). The *Moore* court noted the defendant's tax issues did not impact his patients.

According to the court in *Moore*, the proposed injunction was premature given that no efforts or supplemental proceedings had been taken to satisfy the judgment. *Moore*, 2017 WL 3718529, at

---

[7] In its response to the Report and Recommendation, the Government asserts it is a burdensome and futile exercise for the United States to be "tasked with finding a willing receiver without first knowing if PSCG has funds to pay the receiver." Dkt. No. 56 at pg. 4. According to the Government, "before identifying and negotiating with the candidate willing receivers, the United States would need to know upfront how much salary PSCG could offer the receiver during any negotiations." *Id*. The Government argues it is Smith's responsibility, after accruing over $1.3 million in delinquent taxes and penalties, to either shut down her failing business or establish that a receiver is a financially feasible remedy to bring PSCG into compliance. *Id.*

*4. "Moreover, the proposed injunction look[ed] more punitive than remedial; cut[] off Dr. Moore's only real chance to repay his and the practice's liabilities; and d[id] not take into consideration how the shutdown [would] impact his patients." *Id.* As such, "even though the United States had demonstrated Dr. Moore's history of noncompliance," the court held the United States had not demonstrated that his conduct warranted the proposed injunction. *Id.* Therefore, the court denied the United States' claim for injunctive relief without prejudice.[8] *Id.*

Before the Court will consider whether PSCG should be ordered to cease operations, the Court must first consider whether the appointment of a receiver will serve as a remedial mechanism through which the Government might recover Smith's unpaid taxes and guarantee compliance with the Injunction Order moving forward. *Jk Peris*, 2018 WL 3949896, at * 5. "Federal courts have broad equitable powers to craft remedial sanctions for civil contempt," including "the ability to appoint a receiver to enforce compliance with the law." *Id.* (quoting *Latney's Funeral Home*, 41 F. Supp. 3d at 36). The Court's power to appoint a receiver is also codified by the Internal Revenue Code, which provides in relevant part that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue . . . orders appointing receivers . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." *Id.* (quoting

---

[8] Similarly here, the Court denies without prejudice the Government's requests to shut down PSCG and enjoin Smith for five years in the event she cannot purge herself of the contempt. The Court acknowledges it might be possible, without first having a receiver appointed, for the Government to establish it is necessary and appropriate to the enforcement of the internal revenue laws for this Court to order under 26 U.S.C. § 7402(a) that PSCG cease operations and that Smith be enjoined from participating in any business that has employees for five years. However, it is not possible here because the Government has not yet made the required showing for such an order. *See United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1182 (3d Cir. 1976) ("This far-reaching order might appropriately be included in a permanent injunction issued after a full evidentiary hearing disclosed a history of repetitive, flagrant violations, suggesting a real danger of recurrent evasions of a more carefully drawn order.").

26 U.S.C. § 7402(a)).

The Court has conducted a *de novo* review of the Magistrate Judge's findings and conclusions. The Court is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court.

In order to aid the Magistrate Judge in determining how best to proceed in the event Smith is unable to purge her contempt, the undersigned orders herein that Smith shall provide the Court information regarding her current financial status, as well as the financial and operating status of PSCG, should she not purge herself of contempt in fifteen days.[9] Accordingly, it is hereby

**ORDERED** that Defendant Jeanna Smith, through her operation of Paris Senior Care Group, Inc. (PSCG), is in civil contempt of the Court's July 27, 2017 Judgment and Permanent Injunction by Consent. It is further

**ORDERED** that the Government shall file with the Court and serve on Defendant Smith, within ten days from the date of entry of this Order, a sworn declaration from Revenue Officer Andrews setting forth the outstanding returns and the exact amount due and owing by Defendant Smith to the Government under the terms of the Injunction Order as of the date of this Order. Revenue Andrews' sworn declaration shall explain how this amount was calculated and shall, to the extent possible, include supporting documentation. It is further

**ORDERED** that Defendant Smith shall have fifteen days following the filing of the sworn declaration in which to purge herself of the civil contempt by remitting to the Government the

---

[9] As urged by the Government, the kind of "hands-on receiver" that may be required in this case will not be cheap and may be cost prohibitive to the small size of PSCG. Dkt. No. 56 at pg. 4.

returns and the amounts set forth in the sworn declaration.  It is further

**ORDERED** that to the extent Smith does not purge herself of her contempt within the time prescribed herein, the Government shall file with the Court and serve on Smith a notice of continued noncompliance. Within this notice, the Government shall identify possible receivers and address how a receivership might work in this instance, including a proposal for what the receiver's duties might be, what the anticipated cost of a receiver might be, and how the receiver's costs and fees should be funded. It is further

**ORDERED** that within fifteen days following any notice of continued noncompliance filed by the Government, Smith shall file a memorandum addressing her current financial status and the current financial and operating status of PSCG. Specifically, Smith shall describe, by referencing financial statements, bank accounts, and other relevant documents, the following:

- what funds, assets and/or accounts receivable PSCG has available to pay a receiver;

- what funds or assets may be available to pay a receiver from Smith personally; and

- the current operating status of PSCG, including the number of employees and their salaries.

This information will address some of the concerns raised by the Government.  It will also assist the Magistrate Judge in determining at a later date whether PSCG's current operations justify the appointment of a receiver.[10]

Smith is advised that failure to file such a memorandum as prescribed may result in the

---

[10] Any receiver who might later be appointed to assume financial control of PSCG on a limited basis could make a more formal accounting to the Court of PSCG's financial viability, including its ability to repay its existing federal tax obligations and stay current on such obligations in the future. *See AmericanWay*, 2017 WL 5514183, at *1.

Court's requiring Smith to permanently shut down the operations of PSCG as an ongoing business and enjoining her from participating in any business (including PSCG) that has employees for a period of five years without prior approval from the Court.

**So ORDERED and SIGNED this 31st day of October, 2018.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE